705 So.2d 54 (1997)
Catalina ARROYO, Appellant,
v.
STATE of Florida, Appellee.
No. 96-2974.
District Court of Appeal of Florida, Fourth District.
December 24, 1997.
*55 Richard L. Jorandby, Public Defender, and Tatjana Ostapoff, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Barbra Amron Weisberg, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, Judge.
The appellant was convicted of three counts of interference with the custody of a minor, in violation of section 787.03(1), Florida Statutes (1993), for taking her three minor children from the custody of their foster parent. The appellant's theory of defense was that she did not participate in the taking of her children from their custodian. Because we find that the state's evidence was not inconsistent with the appellant's hypothesis of innocence, the appellant's motion for judgment of acquittal should have been granted.
The three children of appellant, Catalina, and her husband, Primo, were adjudicated dependent in juvenile proceedings. The children were placed in foster care in 1991, where Catalina and Primo could visit them.[1] In order to obtain reunification with their children, the parents were required to complete tasks under a performance agreement with HRS. A short time before the date of the children's disappearance, the parents went before the court to request a longer visit with the children for the purpose of taking them to a restaurant for their older son's birthday. The court granted this request.
On the appointed day, Primo and Catalina drove to the park where the foster mother delivered the children to their care. They agreed that they would return the children by 7 p.m. that night, and drove off with the children in the car. When they had not returned to the park by 8 p.m., the foster mother called the police.
Instead of going to the birthday dinner at the restaurant, Primo headed for Mexico. His son testified that during the trip, Primo did all of the driving. He paid for all of the gas and food for the family. Although the son never heard his parents talking throughout the trip, he admitted that Primo was generally the dominant figure  that he "kind of ran the show" in the family. The foster mother, on the other hand, did not observe any dominance of one parent over the other in her dealings with them.
The police investigated the disappearance of the family and contacted the employers of Catalina and Primo. Catalina's employer was not a witness at the trial, and the investigating officer testified only that the police had asked her employer to contact them if Catalina showed up at work.[2] When the police went to Catalina and Primo's home, they found that nothing appeared out of place. The parties' clothes and personal effects were all still there, as though they had left on the spur of the moment, according to the police.
While an extensive search for the children was ongoing, the family stayed in Mexico but later moved to Texas for Primo to find work. During their stay in Texas, the parents were arrested on the Florida warrants for interference with the custody of their children, at which time they were returned to Florida.
*56 After the state rested, Catalina moved for judgment of acquittal, which was denied. We do not recount fully the evidence which she offered in her defense by way of her husband's testimony, since the "`jury should never have been given the case because appellant's motions for directed verdict should have been granted.'" Willis v. State, 497 So.2d 947, 948 (Fla. 1st DCA 1986)(quoting Davis v. State, 436 So.2d 196, 198 (Fla. 4th DCA 1983)).[3] The jury found her not guilty of three counts of removing a minor from the state or concealing a minor contrary to the court order, but she was found guilty of three counts of interference with custody.
In moving for a judgment of acquittal, the defendant admits all facts in evidence and every conclusion favorable to the State which may be reasonably inferred therefrom. See State v. Law, 559 So.2d 187, 188 (Fla. 1989). Circumstantial evidence can support a conviction only if it is consistent with guilt and inconsistent with any reasonable hypothesis of innocence. See id. The state is not required to rebut conclusively every possible variation of events which could be inferred from the evidence, but only to introduce competent evidence that is inconsistent with the defendant's theory of events. See id. at 189. If the state does not offer evidence that is inconsistent with the defendant's hypothesis of innocence, then the state's evidence would be insufficient as a matter of law. See id. at 188-89.
The jury convicted Catalina of interference with custody, in violation of section 787.03(1), which provides, in pertinent part:
Whoever, without lawful authority, knowingly or recklessly takes or entices, or aids, abets, hires, or otherwise procures another to take or entice, any child 17 years of age or under or any incompetent person from the custody of his parent, his guardian, a public agency having the lawful charge of the child or incompetent person, or any other lawful custodian commits the offense of interference with custody and shall be guilty of a felony of the third degree....
Catalina argues that the only theory to support her conviction for interference with custody is that she aided and abetted her husband in taking or enticing the children from their lawful custodian. However, the state contends that she could be held liable as a principal and may have planned the whole disappearance. The proof necessary to convict under either theory is the same:
If the defendant helped another person or persons commit a crime, the defendant is a principal and must be treated as if she had done all the things the other person did if: (1) the defendant had a conscious intent that the criminal act be done and (2) the defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist or advise the other person ... to actually commit the crime.
Fla.Std.Jury Instr. (Crim.) 3.01, [p. 32a]; see Willis, 497 So.2d at 947; G.C. v. State, 407 So.2d 639 (Fla. 3d DCA 1981).
With respect to the intent element, "`[w]here there is no direct evidence of intent, the circumstantial evidence relied upon to show such an intent must be such as to preclude every reasonable inference that the defendant did not intend to participate in the criminal activity.'" In the Interest of A.R., 460 So.2d 1024, 1024-25 (Fla. 4th DCA 1984)(quoting A.Y.G. v. State, 414 So.2d 1158, 1158-59 (Fla. 3d DCA 1982)). In addition, the act or word necessary to assist or encourage the commission of the offense must be indicative of participation in the criminal activity and must not equally support a hypothesis of innocence.
While the state argues that Catalina may have planned the entire episode, there is simply no evidence which supports that theory. It argues that several facts establish "acts of participation" sufficient to sustain Catalina's conviction. First, the state points to the fact that Catalina quit her job approximately a week before they left for Mexico.
*57 Unfortunately, the state failed to present any evidence on this point. Second, the state notes that Catalina had learned that her parental rights would be terminated. This testimony was not offered in the state's case but came out in Primo's testimony. Therefore, it too cannot be used to support the denial of her motion for judgment of acquittal.
The state next points to evidence of Catalina's conduct in Texas, including her behavior after she and Primo were arrested, and the fact that both parents told the children to use different last names. Reliance on Catalina's actions in Texas is misplaced. The crime of interference with the custody of a minor occurred when the children were seized and transported to Mexico, the prohibited act being the taking or enticing from the custody of the parent or lawful custodian. The actions of Catalina in Texas may have been consistent with concealment of the children, but the jury acquitted her of that violation. Thus, Costlow v. State, 543 So.2d 1259 (Fla. 5th DCA 1989), is distinguishable, because the state charged the defendant in that case with concealment and not with interference with custody.
Finally, the state points to the testimony of the son that his parents "tricked him" into thinking that they were going to celebrate his birthday. But his testimony was that his father told him they were going to the restaurant for his birthday, and he admitted that he did not hear his mother communicate in any way with Primo during the trip.
Thus, what we have is evidence that Catalina came with Primo to pick up the children and drove with them to Mexico. As we said in In the Interest of A.R.:
Construed in a light most favorable to the State, this evidence establishes no more than appellant's presence at the scene and knowledge of his companion's intent to commit a crime.
Presence at the scene, without more, is not sufficient to establish either intent to participate or act of participation. J.L.B. v. State, [396 So.2d 761 (Fla. 3d DCA 1981)] supra; J.H. v. State, 370 So.2d 1219 (Fla. 3d DCA 1979). Mere knowledge that an offense is being committed is not equivalent to participation with criminal intent. See, e.g., United States v. Martin, 533 F.2d 268 (5th Cir.1976). Knowledge that a crime is going to be committed and presence at the scene, without more, is generally insufficient to establish aiding and abetting. See, e.g., Nye & Nissen v. United States, 336 U.S. 613, 619, 69 S.Ct. 766, 769, 93 L.Ed. 919, 925 (1949); Baker v. United States, 395 F.2d 368 (8th Cir.1968); Ramirez v. United States, 363 F.2d 33 (9th Cir.1966).

G.C. v. State, 407 So.2d 639, 640 (Fla. 3d DCA 1981).
460 So.2d at 1025.
The state presented evidence only of Catalina's presence in the car when Primo drove the family to Mexico. There were no words or acts, other than presence, to show participation. We find that the state's evidence was insufficient to negate the appellant's hypothesis of innocence. The evidence which the state produced was consistent with her theory. The judgment of acquittal should have been granted.
Reversed and remanded for discharge of the appellant.
FARMER, J., and AMY STEELE DONNER, Associate Judge, concur.
NOTES
[1] At some point before their disappearance, the parents were told that HRS would seek to terminate their parental rights. While the state mentioned this in its opening argument, there was no testimony about this in the state's case.
[2] In opening statement, the prosecutor told the jury that Catalina had quit her job the week before the parents took the children. However, no evidence of this fact was ever put before the jury in the state's case.
[3] Her husband, who had pleaded guilty and received a six month jail sentence, testified in her defense that it was solely his idea to take the children and that Catalina knew nothing about it until the family was on its way to Mexico. He also told the jury that Catalina had quit her job at his request because he wanted her to go to school to learn more. After she rested, the motion for judgment of acquittal was renewed and denied.