805 So.2d 32 (2001)
Jay Junior SIGLER, Appellant,
v.
STATE of Florida, Appellee.
No. 4D00-19.
District Court of Appeal of Florida, Fourth District.
December 5, 2001.
Rehearing Denied February 7, 2002.
*33 Carey Haughwout, Public Defender, and Paul E. Petillo, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and August A. Bonavita, Assistant Attorney General, West Palm Beach, for appellee.
OWEN, WILLIAM C., Jr., Senior Judge.
Appellant, Jay Junior Sigler, was indicted and tried for the crime of first-degree felony murder, the state charging that the homicide was committed while appellant was engaged in an escape. Appellant was convicted of second-degree murder as a lesser included offense. His primary argument on this direct appeal is that the evidence was insufficient to support his conviction for second-degree murder. We agree and reverse the judgment as to him[1], directing the trial court to enter judgment for third-degree felony murder.
While appellant was serving a lawful twenty year prison sentence, he, with the aid of his mother and three of his friends, including Christopher Michelson, crafted and successfully carried out an elaborate scheme for appellant's escape from the state prison in Miami-Dade County. At an agreed time, one cohort drove a stolen semi-tractor trailer through the prison's perimeter fence, and simultaneously the other three arrived in two, possibly three, getaway cars. During the commotion, appellant ran through the breach in the prison fence and entered one of the getaway cars, whereupon all sped away to a rendezvous point. There, an exchange of cars and drivers occurred as police were approaching. Although the others were apprehended on the spot, appellant and Michelson successfully fled the scene in a Saturn automobile owned by appellant's mother. The two drove to the City of Lake Worth where they stayed overnight in a motel. There they watched television reports of the escape, and became aware that the police were on the lookout for the Saturn.
Around noon of the following day, the two left the motel in the Saturn, with Michelson driving. En route to Fort Lauderdale to visit Michelson's family, they were spotted by a police officer. A high speed chase ensued with Michelson accelerating to speeds estimated as high as eighty miles an hour. Eventually, he turned into a narrow alley, at the end of which he ran a stop sign, crossed the transverse street, and entered the alley in the next block. Continuing at high speed, he ran a stop sign at the next transverse street where, tragically, he crashed into another car, killing its driver. Appellant *34 and Michelson were arrested at the scene of the fatal collision.
The court instructed the jury on first-degree felony murder as charged in the indictment. In addition, at the state's request and over appellant's objection, the court instructed the jury on the lesser-included offenses of second-degree murder and third-degree felony murder. The jury returned a verdict of guilty as to the lesser-included offense of second-degree murder,[2] for which appellant was sentenced to a term of life in prison. He challenges the sufficiency of the evidence to sustain his conviction of second-degree murder.
Because appellant was charged with first-degree felony murder and objected to the lesser-included charge of second-degree murder, he is not precluded from raising this challenge. See State v. Espinosa, 686 So.2d 1345 (Fla.1996); Viveros v. State, 699 So.2d 822 (Fla. 4th DCA 1997). A challenge to the sufficiency of the evidence tests the adequacy of the evidence to support the jury's verdict. Tibbs v. State, 397 So.2d 1120, 1123 (Fla. 1981); see also Brumley v. State, 500 So.2d 233, 234 (Fla. 4th DCA 1986). On appeal, "the concern [is] whether, after all conflicts in the evidence and all reasonable inferences therefrom have been resolved in favor of the verdict on appeal, there is substantial, competent evidence to support the verdict and judgment." Tibbs, 397 So.2d at 1123. The appellate court undertakes a de novo review of the sufficiency of the evidence to support the verdict. State v. Williams, 742 So.2d 509, 511 (Fla. 1st DCA 1999).
Second-degree murder is defined as
The unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual ...
§ 782.04(2), Fla. Stat. (1997). As recognized in Duckett v. State, 686 So.2d 662 (Fla. 2d DCA 1996), Florida Standard Jury Instructions define the term "imminently dangerous to another and evincing a depraved mind regardless of human life" as an act or series of acts that:
1. a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another, and
2. is done from ill will, hatred, spite or an evil intent, and
3. is of such a nature that the act itself indicates an indifference to human life.
Id. at 663.
To prove that an act demonstrates a depraved mind, the state must prove that it was done from "ill will, hatred, spite or an evil intent." Rayl v. State, 765 So.2d 917, 919 (Fla. 2d DCA 2000) (citation omitted). Since appellant was neither the driver, owner, nor in control of the car which crashed into and killed the victim, his criminal liability, if any, normally would have to be established under a principal theory. In this case, however, we need not decide whether appellant, a passenger, could be convicted as principal because there is no evidence of "ill will, hatred, spite or evil intent" directed at the victim. See Duckett, 686 So.2d at 663; Ellison v. State, 547 So.2d 1003, 1005 (Fla. 1st DCA 1989), approved in part, quashed in part by State v. Ellison, 561 So.2d 576 (Fla.1990).
In Duckett, the defendant was highly intoxicated, speeding, weaving in and out of traffic and almost caused two accidents *35 before he eventually collided with a tow-truck and a disabled church bus killing five people. The court held that the facts were insufficient to satisfy the intent element of second-degree murder. See id.
In Ellison, the defendant drove recklessly to elude police, weaving in and out of traffic at high speed, ramming through a blocked toll gate at 65 miles per hour, jumping a median onto a service road, finally losing control of the vehicle and crossing the center line of a major highway where he crashed into another vehicle head on, causing the death of the victim. The court held that there was no view of these facts from which the jury could properly conclude that the driver's actions were done "from ill will, hatred, spite or an evil intent." Id. at 1006. Therefore, the conviction for depraved mind second-degree depraved murder could not be sustained. Id.
As in Ellison and Duckett, there was nothing in this case to establish that Michelson, much less appellant, as principal, acted with ill will, hatred, spite or an evil intent; therefore, consistent with the teaching of Duckett and Ellison, appellant's conviction for depraved mind second-degree murder lacks evidentiary support, and must be reversed.
Section 924.34, Florida Statutes, provides that when the appellate court determines that the evidence is insufficient to sustain the offense for which the defendant was convicted, but does establish his guilt as to a necessarily included lesser offense, the appellate court shall reverse the judgment and direct the trial court to enter a judgment for the lesser-included offense. See I.T. v. State, 694 So.2d 720 (Fla.1997). Here, the underlying crime supporting the third-degree felony charge was the offense of harboring, concealing, or aiding an escaped prisoner. Section 944.46 defines the crime as follows:
Whoever harbors, conceals, maintains, or assists, or gives any other aid to any prisoner after his or her escape from any state correctional institution, knowing that he or she is an escaped prisoner, shall be guilty of a felony of the third degree ...
As to this crime, the court instructed the jury that before it could find either defendant guilty of third-degree felony murder it must find:
The death occurred as a consequence of and while Christopher Lee Michelson was engaged in the commission of harboring, concealing, or aiding an escaped prisoner; or the death occurred as a consequence of and while Christopher Lee Michelson was attempting to harbor, conceal, or aiding an escaped prisoner; or the death occurred as a consequence of and while Christopher Lee Michelson and/or Jay Junior Sigler or an accomplice was escaping from the immediate scene of harboring, concealing, or aiding an escaped prisoner.
Without question Michelson could be convicted of third-degree felony murder committed in furtherance of the crime of harboring an escaped prisoner, i.e., appellant. The issue for us is whether appellant, the escapee, can be guilty of concealing, assisting or giving aid to an escaped prisoner, i.e., himself. While appellant labels it "absurd" to hold that an escaped prisoner is liable as a principal on the theory that he allowed himself to be harbored, concealed or maintained, we are not prepared to dismiss the concept so lightly. It seems to us that it is not so much a legal issue of whether an escapee can or cannot harbor himself, but rather is a factual issue determined by the discrete facts in each case. As stated in Lovette v. State, 636 So.2d 1304 (Fla.1994),
Felons, however, are generally responsible for the acts of their co-felons. As *36 perpetrators of an underlying felony, co-felons are principals in any homicide committed to further or prosecute the initial common criminal design. "One who participates with another in a common criminal scheme is guilty of all crimes committed in furtherance of that scheme regardless of whether he or she physically participates in that crime."
Id. at 1306 (citations omitted)(quoting Jacobs v. State, 396 So.2d 713, 716 (Fla. 1981)). A principal in the first degree is defined by Florida Statute as follows:
Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such, whether he or she is or is not actually or constructively present at the commission of such offense.
§ 777.011, Fla. Stat. (1997). As explained by the supreme court,
[B]oth the actor and those who aid and abet in the commission of the crime are principals in the first degree. In order to be guilty as a principal for a crime physically committed by another, one must intend that the crime be committed and do some act to assist the other person in actually committing the crime.

Staten v. State, 519 So.2d 622, 624 (Fla. 1988) (citations omitted)(emphasis added); accord Arroyo v. State, 705 So.2d 54 (Fla. 4th DCA 1997)(defendant must have conscious intent that criminal act be done and must do some act or say some word which was intended to "incite, cause, encourage, assist or advise the other person ... to actually commit the crime").
Here, appellant was not simply an escapee who, having gained temporary freedom from lawful confinement, sought and found some aid or concealment. Appellant's escape was the result of an elaborate scheme, planned over a period of many months, which clearly contemplated aid and concealment once he was outside the prison confinement. His was the starring role, and the entire scenario was planned and carried out exclusively for his benefit. Staying out of prison was just as imperative as getting out. To suggest that he was simply along for the ride, with no involvement in efforts to keep him from being apprehended by the authorities, is contrary to both the evidence and common sense. Under the facts presented here, we can see no reason why appellant, albeit an escapee, is any less a principal in his own harboring than are those with whom he jointly participatedall were in a common criminal scheme seeking to elude the authorities. The evidence supports a finding that appellant was a perpetrator of this underlying felony and, thus, a principal in the homicide committed to further the common criminal design. We hold, therefore, that a judgment for third-degree felony murder should be entered against appellant.
As a separate point on appeal, appellant contends that the trial court erred in allowing into evidence, over appellant's objection, evidence of the nature of the convictions for which appellant was in custody at the time of his escape. Proof of lawful custody is a necessary element in order to convict a defendant of escape. Appellant offered to stipulate to the lawfulness of his custody. Over defendant's objection, however, the court, at the state's request, included in the stipulation the fact that appellant was serving twenty years for conviction of two counts of strong arm robbery.
*37 Years earlier, appellant and Michelson, good friends, had jointly committed the same crimes, but appellant received a twenty year sentence while Michelson received only an eight year sentence. It was the state's theory in this case that evidence of the disparate sentences received by the two would reasonably tend to show a motive for appellant's desire to escape, as well as Michelson's desire to aid appellant in that effort. We can not say that the court abused its discretion in admitting evidence of the length of appellant's sentence. Permitting introduction of evidence of the nature of the offense for which appellant was then in lawful custody is generally held to be error. See Brown v. State, 719 So.2d 882 (Fla.1998); Sanders v. State, 517 So.2d 134 (Fla. 4th DCA 1987). However, reversal is not required where there is no reasonable possibility that the error harmfully contributed to the verdict. See § 924.051(3), Fla. Stat.; Goodwin v. State, 751 So.2d 537 (Fla.1999); State v. DiGuilio, 491 So.2d 1129 (Fla.1986). In this case, the jury was properly aware that appellant was an escaped prisoner serving a twenty year sentence from which they could reasonably infer that the crime was of a serious nature. Therefore, there is no reasonable possibility that the introduction of evidence naming the actual crime harmfully contributed to the verdict.
In sum, the evidence was insufficient to sustain the conviction of second-degree murder, but supports a conviction of third-degree felony murder. The judgment for second-degree murder is reversed and the sentence entered thereon is vacated. Upon remand, the trial court is directed to enter a judgment of third-degree felony murder as a lesser-included offense of that charged in the indictment, and to sentence appellant thereon accordingly.
REVERSED and remanded with instructions.
DELL and TAYLOR, JJ., concur.
NOTES
[1] This appeal does not involve appellant's co-defendant, Christopher Michelson, case no. 4D99-4280. The opinion in that case is being released simultaneously herewith.
[2] By returning a verdict for the lesser offense, the jury necessarily found that the homicide did not occur while appellant was committing an escape.