889 So.2d 100 (2004)
Joshua SMALLEY, Appellant,
v.
STATE of Florida, Appellee.
No. 5D03-2513.
District Court of Appeal of Florida, Fifth District.
November 19, 2004.
*102 James B. Gibson, Public Defender, and Brynn Newton, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Robin A. Compton, Assistant Attorney General, Daytona Beach, for Appellee.
SHARP, W., J.
Smalley appeals from his conviction for second degree murder[1] following a jury trial. He raises three points on appeal: the trial court should have granted his motion for judgment of acquittal because there was insufficient evidence to provide a basis for the jury's determination that the shooting of the victim was done with ill will, hatred, spite or an evil intent; the trial court should have granted his motion for mistrial because the prosecutor violated a pre-trial ruling barring testimony that Smalley had possessed and or discharged the firearm involved in this case, on a prior occasion; and that the trial court erred in requiring Smalley, at sentencing, to submit biological specimens for DNA analysis pursuant to section 943.325. We affirm.
A conviction for second degree murder requires proof that the defendant killed the victim with a depraved mind regardless of human life. See § 782.04(2); Roberts v. State, 425 So.2d 70, 71 (Fla. 2d DCA 1982). In turn, proof of a depraved mind may be established by proof the shooting was done with "ill will, hatred, spite, or an evil intent." See Sigler v. State, 805 So.2d 32, 34 (Fla. 4th DCA 2001); Rayl v. State, 765 So.2d 917, 919 (Fla. 2d DCA 2000).
Although the witnesses' testimony presented at trial concerning the shooting of the victim were in conflict, those presented by the state were sufficient to create a jury issue regarding Smalley's state of *103 mind at that time. See Brewer v. State, 413 So.2d 1217 (Fla. 5th DCA 1982). Smalley testified he was being threatened by the victim and another man, that he was hit in the face, and the gun "went off". Other witnesses testified the victim and another man were not threatening Smalley, that he went to his bedroom and got a gun, shot it into a wall, and then followed the victim to his car, holding the gun behind his back.
The defendant's girlfriend was in the process of hitting the victim's car with a hammer, and the victim told Smalley to stop her, and that he wanted to leave. The victim was upset and yelling at Smalley, but did not threaten him. This continued a few moments. Then Smalley raised the gun from behind his back, and shot the victim at close range, in the chest. These facts are similar to those in Turner v. State, 298 So.2d 559 (Fla. 3d DCA 1974), where the evidence established that the defendant held a gun behind his back for five seconds before shooting the victim, with whom he had been quarreling. The court held sufficient evidence of malice had been established to support a second degree murder conviction.
Smalley also argues that his conviction should be reduced to manslaughter because the jury specifically found that he possessed a firearm rather than that he intentionally discharged a firearm. He argues these are inconsistent verdicts. The problem is how to determine whether a jury verdict is "truly inconsistent," or whether the jury merely granted the defendant a jury pardon. State v. Connelly, 748 So.2d 248 (Fla.1999). "True inconsistent verdicts" are not permitted. Fayson v. State, 698 So.2d 825 (Fla.1997) This occurs when one count negates a necessary element for a conviction on another count. Gonzalez v. State, 440 So.2d 514, 515 (Fla. 4th DCA 1983).
In this case, the jury's rejection of "intentional discharge of a firearm" is not truly inconsistent with its conviction of Smalley for second degree murder. Second degree murder does not require the finding of an intentional discharge of a firearm. The facts in this case were sufficient for a jury to conclude Smalley shot the victim with a depraved mind regardless of human life.
Smalley's second point, that the trial court should have granted his motion for mistrial comes to us on an abuse of discretion standard of review. See Goodwin v. State, 751 So.2d 537, 546 (Fla.1999); Thomas v. State, 748 So.2d 970, 980 (Fla.1999); Power v. State, 605 So.2d 856, 861 (Fla.1992); Wolcott v. State, 774 So.2d 954, 957 (Fla. 5th DCA 2001). We find no abuse of discretion here.
Pre-trial, the court granted the defense's motion in limine to bar testimony that Smalley had shot, possessed or displayed the gun used in the killing, on any occasion prior to the night of the murder. During the cross examination of Smalley, the prosecutor elicited the fact that Smalley had fired a practice round in the house and knew the revolver was functional. The prosecutor also elicited the fact that someone else had been practicing shooting with the gun in Smalley's house. The defense objected and the court sustained the objection. Later the defense made a motion for mistrial, but the court denied the motion.
With regard to eliciting the fact that Smalley fired one practice round in the house, immediately before taking the gun outside to confront the victim, it is not clear that this fact was prohibited by the ruling in limine. The ruling appears only to prohibit a showing that Smalley had shot, possessed or displayed the gun on occasions prior to the events culminating in the victim's death. Indeed, the fact that *104 Smalley went to his bedroom, got the gun, shot it, brought it outside and hid it behind his back prior to shooting the victim, are all part and parcel of the actual criminal episode. These facts should not have been barred by a rule in limine.
The additional fact elicited, that someone else had been practicing shooting with the gun in Smalley's residence, if error, appears to be harmless in this case.[2] In Smalley's video taped statement which was played to the jury, he said his nephew had previously shot a couple of holes in the wall with the gun, a few months earlier. Smalley also had previously admitted at trial, that he knew the gun was in working order. We fail to see how the admission of this testimony contributed to the verdict against Smalley. State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
With regard to Smalley's third point on appeal, his primary argument is that section 943.325 Florida Statutes (2002) is unconstitutional because the taking of DNA samples violates his 4th amendment rights. In this case, at sentencing, the trial court ordered that Smalley be required to submit blood specimens, pursuant to section 943.325.[3]
*105 Although the taking of blood samples or other bodily intrusions may constitute a search within the scope of the 4th amendment[4], the courts have established a special needs exception. In Green v. Berge, 354 F.3d 675 (7th Cir.2004) the court held:
Like administrative searches, in which the warrant and probable cause showing are replaced by the requirement of showing a neutral plan for execution, a compelling governmental need, the absence of less restrictive alternatives and reduced privacy rights [citations omitted], special needs searches adopt a balancing of interests approach. Special needs searches have been held to include drug testing.... In determining the reasonableness of these searches the Supreme Court has considered the governmental interest involved, the nature of the intrusion, the privacy expectations of the object of the search and, to some extent, the manner in which the search is carried out.... Although the state's DNA testing of inmates is ultimately for a law enforcement goal, it seems to fit within the special needs analysis the Court has developed for drug testing and searches of probationers' homes, since it is not undertaken for the investigation of a specific crime.
Other state courts have approved a DNA collection statute similar to Florida's, on the ground it serves an important state interest ("special needs doctrine"), and because inmates subject to the testing are in custody, and are already "seized". State v. Martin, 686 N.W.2d 456 (Wis.App.2004) Persons convicted of crimes, or ones who have been arrested on probable cause, lose many rights to personal privacy under the 4th Amendment,[5] as well as probationers.[6]
Our sister courts in this state have found this statute to be constitutional. See Gonzalez v. State, 869 So.2d 1231 (Fla. 2d DCA 2004); L.S. v. State, 805 So.2d 1004 (Fla. 1st DCA 2001). The basis for these rulings is that a convicted person has no reasonable expectation of privacy with respect to blood samples for DNA testing which outweighs the state's interest in identifying convicted felons in a manner that cannot be circumvented, in apprehending criminals, in preventing recidivism and in absolving innocent persons charged with crimes. We continue to agree with these holdings, and their rationale. Springer v. State, 874 So.2d 719 (Fla. 5th DCA 2004).
AFFIRMED.
PALMER and TORPY, JJ., concur.
NOTES
[1] Section 782.04(2), Florida Statutes (2002).
[2] In Williams v. State, 863 So.2d 1189 (Fla.2003), the supreme court instructed that the test for harmful error is not a(1) sufficiency of the evidence, (2) correct result, (3) "not clearly wrong," (4) substantial evidence, (4) "more probable than not, (5) clear and convincing, or even (6) an overwhelming evidence test." Instead, the focus is on the effect of the error on the trier of fact. Williams. The question under the harmless error standard is whether there is a reasonable possibility that the error affected the verdict. Williams. If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is harmful by definition. Williams.
[3] Section 943.325, Florida Statutes (2002) provides in part:

(1)(a) Any person who is convicted or was previously convicted in this state for any offense or attempted offense enumerated in paragraph (b), and any person who is transferred to this state under Article VII of the Interstate Compact on Juveniles, part V of chapter 985, who has committed or attempted to commit an offense similarly defined by the transferring state, who is either:
1. Still incarcerated, or
2. No longer incarcerated, or has never been incarcerated, yet is within the confines of the legal state boundaries and is on probation, community control, parole, conditional release, control release, or any other type of court-ordered supervision, shall be required to submit two specimens of blood or other biological specimens approved by the Department of Law Enforcement to a Department of Law Enforcement designated testing facility as directed by the department. (Emphasis added)
(b)1. Chapter 794, Chapter 800, s. 782.04, s. 784.045, s. 810.02, s. 812.133 or s. 862.135.
* * *
(2) The withdrawal of blood for purposes of this section shall be performed in a medically approved manner using a collection kit provided by, or accepted by, the Department of Law Enforcement and only by or under the supervision of a physician, registered nurse, licensed practical nurse, duly licensed medical personnel, or other trained and competent personnel. The collection of other approved biological specimens shall be performed by any person using a collection kit provided by, or accepted by, the Department of Law Enforcement in a manner approved by the department, as directed in the kit, or as otherwise found to be acceptable by the department.
* * *
(6) In addition to the specimens required to be submitted under this section, the Department of Law Enforcement may receive and utilize other blood specimens or other approved biological specimens. Any analysis, when completed, shall be entered into the automated database maintained by the Department of Law Enforcement for such purpose, as provided in this section, and shall not be included in the state central criminal justice information repository.
(7) The results of a DNA analysis and the comparison of analytic results shall be released only to criminal justice agencies as defined in s. 943.045(10), at the request of the agency. Otherwise, such information is confidential and exempt from the provisions of s. 119.07(1) and s. 24(a), Art. I of the State Constitution.
(8) The Department of Law Enforcement and the statewide criminal laboratory analysis system shall establish, implement, and maintain a statewide automated personal identification system capable of, but not limited to, classifying, matching, and storing analyses of DNA (deoxyribonucleic acid) and other biological molecules. The system shall be available to all criminal justice agencies.
[4] See Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989); Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).
[5] See Jones v. Murray. 962 F.2d 302 (4th Cir.1992); Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); as do convicted felons, Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)
[6] Griffin v. Wisconsin, 483 U.S. 868, 880, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987).