GROSS, J.,
concurring in part and dissenting in part.
There was sufficient evidence to give the case to the jury on the charge of second degree murder.
In the light most favorable to the state, the evidence supporting the theory that Cornejo was a principal in a second degree murder was the following:
1. Cornejo associated with the shooter as a member of a gang known as “SUR 13,” which had had ongoing “problems” with a rival group, which included the victim and his friends.
2. • On the evening of the shooting, the victim got in a verbal fight with the shooter and his friends and threw a two- *1163 by-four at the shooter’s ear. Later that evening, the victim and another person burglarized an apartment where a member of the SUR-13 faction resided.
3. Cornejo was a passenger in one of two cars that went looking for the victim. While the car was driving slowly down the road, Cornejo eyeballed an undercover police officer, who testified: “The only way to really put it is that he had a purpose. He was looking for somebody or maybe scanning the area
4. Cornejo and his friends cornered the victim near a Farm Store. The gang members surrounded the victim, with two wielding knives and one holding a gun. Although no witness placed a weapon in his hand, Cornejo was amidst the group trying to stab and hit the victim. A witness heard someone call out to Cornejo. The victim swung a two-by-four, attempting to knock the weapons away. Another witness said that during the melee, Cornejo was “standing close” to the victim, “just standing right there doing nothing.” During the fight, the shooter pulled out a gun and fired two shots at the victim. Everyone, including Cornejo, jumped into two cars and left the scene.
5. When the police caught Cornejo, he was in the front passenger seat of a car containing six other gang members. Blood that matched the victim was found on an inside door. From the car, the police recovered a screwdriver on the front passenger seat and other weapons from other locations. The police recovered three screwdrivers from another car containing gang members.
6. The medical examiner opined that the victim had two square marks on his back that were caused by a screwdriver.
7. The morning after the arrest, Cor-nejo and the shooter were in a holding cell with nine other gang members. The shooter gave a pep talk to his friends, acknowledging that he had pulled the trigger and saying that “as long as you guys stick to your story and don’t talk to anybody, we shouldn’t have any problems.” Cornejo told the group that there was nothing to worry about, “that it all goes back to the fact that there really were no witnesses, and as long as [we] stick together with the story [then] everything should pan out.”
8.A friend of the victim, Julio Mejia, was also in the holding cell with Corne-jo. Mejia testified that Cornejo “told me that if they [had] caught me that day, they were going to kill me.” On cross-examination, Mejia reiterated that Cornejo told him in the holding cell, “If they had grabbed me that day, they would have killed me.” The trial judge understood Mejia’s testimony about Cor-nejo’s statement to mean “If [my friends and I] could have gotten to you, we would have killed you too.” The trial judge felt that it was this statement that justified giving the case to the jury.
One view of the evidence was that Cor-nejo accompanied his fellow gang members to look for the victim, was present at the scene where the victim was beaten and shot, fled the scene with his fellow gang members after the shooting, was in one of the two cars in which the gang members fled the scene, participated in an attempted cover up with his friends in jail, and told Mejia, the victim’s friend, that if the gang had caught him the night before, they would have killed him too. This is at least as much evidence as the “getaway driver [in an armed robbery] who has prior knowledge of the criminal plan and is ‘waiting to help the robbers escape,’ ” a set of facts which the supreme court has held sufficient to support a conviction as a principal in a robbery. Staten v. State, 519 So.2d 622, 624 (Fla.1988) (citation omitted)
*1164 I agree with the majority that under Sigler v. State, 881 So.2d 14 (Fla. 4th DCA 2004), if reversal is required, the proper remedy is to remand the case for retrial on the third degree felony murder charge. Although it is not an issue here, I maintain that Sigler v. State, 805 So.2d 32 (Fla. 4th DCA 2001), was wrongly decided for the reasons given in my concurring opinion in Michelson v. State, 805 So.2d 983, 986-87 (Fla. 4th DCA 2002) (Gross, J., concurring specially).