# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### November 16, 2004 Session

## STATE OF TENNESSEE v. BRUCE WARREN SCARBOROUGH

**Interlocutory Appeal from the Criminal Court for Knox County**
**No. 75589      Mary Beth Leibowitz, Judge**

———————————

**No. E2004-01332-CCA-R9-CD - Filed June 2, 2005**

———————————

The appellant, Bruce Warren Scarborough, was charged in the Knox County Criminal Court with four counts of aggravated rape. He filed a motion to suppress DNA evidence linking him to the crimes, and the trial court denied the motion. From the trial court's order, the appellant now brings this interlocutory appeal, arguing that the DNA evidence was obtained in violation of his right to be free from unreasonable searches and seizures as provided by the Fourth Amendment to the United States Constitution and Article I, Section 7 of the Tennessee Constitution. Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Criminal Court Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID H. WELLES and David G. Hayes, JJ., joined.

Mark E. Stephens, District Public Defender, and John Halstead, Assistant Public Defender, Knoxville, Tennessee, for the appellant, Bruce Warren Scarborough.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Randall Eugene Nichols, District Attorney General; and Kevin Allen, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

This case relates to the victim's being raped repeatedly in her apartment on March 29, 1997. The record reflects that about 5:00 a.m. on March 29, the victim awoke to find duct tape over her eyes and a man assaulting her. The attacker raped the victim vaginally and anally, forced her to perform fellatio, and performed cunnilingus on her. The victim went to a hospital and rape kit testing was performed.

In an unrelated case, the appellant pled guilty to aggravated burglary, theft, and sexual battery in the Knox County Criminal Court on March 10, 1999. The trial court sentenced him to an effective sentence of fifteen years in the Department of Correction. On April 22, 1999, a nurse at Brushy Mountain State Prison collected a sample of the appellant's blood pursuant to Tennessee Code Annotated section 40-35-321(b), which provides that defendants convicted of certain sexual offenses must provide a biological specimen for DNA analysis. On June 27, 2002, the Tennessee Bureau of Investigation (TBI) sent a letter to a Knoxville detective, informing him that the appellant's DNA matched DNA from semen in the victim's rape kit. The letter also requested a second blood sample from the appellant. Based on the letter, the detective obtained a search warrant, and a second blood sample was obtained. Testing revealed that DNA from the appellant's second blood sample also matched evidence from the victim's rape kit. The state charged the appellant with four counts of aggravated rape, a Class A felony, against the victim.

On November 4, 2003, the appellant filed a motion to suppress the DNA evidence, arguing that the first blood sample was taken in violation of his right to be free from unreasonable searches and seizures in the Fourth Amendment to the United States Constitution and Article I, Section 7 of the Tennessee Constitution and that he did not consent to giving the sample. The appellant also argued that the second blood sample was fruit of the poisonous tree. At a hearing on the motion, Cleo Charlene Smith, a registered nurse, testified that she worked for Brushy Mountain State Prison and performed health screenings on new inmates. Smith stated that when a prisoner first arrived at the prison, she would question him about his medical history and collect a blood sample. According to Ms. Smith, the purpose for collecting the blood sample was to obtain a general health assessment about the prisoner and perform DNA testing. Before collecting the sample, Ms. Smith would explain the purpose of collecting the blood to the prisoner and the prisoner had to give his consent. A prisoner could refuse to give a blood sample, but he would not be eligible for parole and would have to serve his sentence day for day if he refused. Ms. Smith said that on April 22, 1999, she explained the purpose of the blood draw to the appellant, that he signed a consent form, and that she collected a blood sample from him. The appellant argued at the hearing that the taking of his blood constituted a warrantless search and violated his right against unreasonable searches and seizures. The appellant also argued that he did not consent to giving the sample and, in the alternative, that his consent was coerced. After the hearing, the trial court denied the appellant's motion to suppress, concluding that he had consented to giving the sample. The trial court granted the appellant's motion for an interlocutory appeal of its order pursuant to Tenn. R. App. P. 9. We likewise granted the appellant's application in this court.

## II. Analysis

The appellant's argument challenges the constitutionality of Tennessee Code Annotated section 40-35-321(b), which provides, in pertinent part, as follows:

> When a court sentences a person convicted of violating or attempting to violate § 39-13-502 [(aggravated rape)], § 39-13-503 [(rape)], § 39-13-504 [(aggravated sexual battery)], § 39-13-505

[(sexual battery)], § 39-13-522 [(rape of a child)] or § 39-15-302 [(incest)], . . . it shall order the person to provide a biological specimen for the purpose of DNA analysis . . . . The biological specimen shall be forwarded by the approved agency or entity collecting such specimen to the Tennessee bureau of investigation which shall maintain it as provided in § 38-6-113. The court shall make the providing of such a specimen a condition of probation or community correction if either is granted.

Both the Fourth Amendment to the United States Constitution and Article I, Section 7 of the Tennessee Constitution provide protection for citizens against "unreasonable searches and seizures."[1] Generally, a warrantless search is considered presumptively unreasonable and, thus, violative of constitutional protections. However, searches without a warrant may be executed under certain conditions. For example, police officers may execute a warrantless search incident to a lawful arrest. Chimel v. California, 395 U.S. 752, 762-63, 89 S. Ct. 2034 (1969). Officers may also conduct a warrantless search if an individual freely and voluntarily gives consent for the search. State v. McMahan, 650 S.W.2d 383, 386 (Tenn. Crim. App. 1983).

The first question we must address is whether the drawing of an individual's blood for physiological testing constitutes a search that would implicate Fourth Amendment concerns. The United States Supreme Court and this court have held that it does. See Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 616, 109 S. Ct. 1402, 1412-13 (1989) (stating that the collection of a person's blood for alcohol content analysis "must be deemed a Fourth Amendment search"); State v. Blackwood, 713 S.W.2d 677, 679 (Tenn. Crim. App. 1986) (stating that "[i]ntrusions into the human body and the withdrawal of blood for the testing of its alcohol content has been held to be subject to the constraints of the Fourth Amendment"). Next, we must determine whether the collection of a prisoner's blood without a warrant and for use in a DNA database is reasonable or creates another exception to the warrant requirement.

In analyzing the reasonableness of such a search, some courts have used a traditional balancing test, weighing an individual's privacy interest against the government's interests in pursuing the search. See State v. Knights, 534 U.S. 112, 118-19, 122 S. Ct. 587, 591 (2001). Factors a court should consider in this reasonableness inquiry include "the strengths of the plaintiff's privacy interest, the nature and scope of the intrusion, and the government interest at stake." Nicholas v. Goord, 2004 U.S. Dist. Lexis 11708 at *16 (S.D.N.Y. 2004). Using this balancing test, courts from the fourth, ninth, and tenth circuits and many state courts have concluded that blood drawn from a prisoner without a warrant and used in a DNA database does not constitute an unreasonable search. See Shaffer v. Saffle, 148 F.3d 1180, 1181 (10th Cir. 1998); Rise v. Oregon,

---

[1] In State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997) (citation omitted), our supreme court noted that "'article I, section 7 is identical in intent and purpose with the Fourth Amendment.'" For the purposes of this opinion, we consider the protection provided by these provisions to be coextensive.

59 F.3d 1556, 1560-62 (9th Cir. 1995); Jones v. Murray, 962 F.2d 302 (4th Cir. 1992); Padgett v. Ferrero, 294 F. Supp. 2d 1338 (N.D. Ga. 2004); Smalley v. State, 889 So. 2d 100 (Fla. Dist. Ct. App. 2004); People v. Ramos, 817 N.E.2d 1110 (Ill. App. Ct. 2004); State v. Surge, 94 P.3d 345 (Wash. Ct. App. 2004).

On the other hand, other courts have applied a "special needs" test in cases involving the collection of a prisoner's DNA for use in a DNA database. When using the special needs test, courts look to some special need for the prisoner's DNA sample beyond the normal need for law enforcement. "If the court determines that the primary purpose of the law or policy is beyond the normal need for law enforcement, it must perform 'a careful balancing of governmental and private interests.'" Vore v. U.S. Dept. of Justice, 281 F. Supp. 2d 1129, 1133 (D. Ariz. 2003) (quoting Portillo v. United States Dist. Ct., 15 F.3d 819, 823 (9th Cir. 1994)). For example, in Vore, the court held that Arizona's DNA database statute passed the special needs test because "the DNA Act's primary purpose is to fill the [federal DNA] database" and "does not, on its own, evidence the commission of a crime." Id. at 1136. The court then concluded that the search was not unreasonable in light of the minimal intrusion upon the felon's privacy interest and the government's significant interest in filling the DNA database. Other courts also have concluded that DNA database statutes satisfy the special needs test. Green v. Berge, 354 F.3d 675 (7th Cir. 2004); Roe v. Marcotte, 193 F.3d 72, 77 (2nd Cir. 1999); United States v. Kimler, 335 F.3d 1132 (10th Cir. 1983); Balding v. State, 812 N.E.2d 169 (Ind. Ct. App. 2004); In re D.L.C., 124 S.W.3d 354 (Tex. Ct. App. 2003); State v. Olivas, 856 P.2d 1076 (Wash. 1993); Doles v. State, 994 P.2d 315 (Wyo. 1999). We note that regardless of which test is used, courts overwhelmingly have concluded that the taking of blood from prisoners for use in a DNA database does not constitute an unreasonable search. See Vore, 281 F. Supp. 2d at 1134 .

In determining which test to apply in this case, we believe that United States v. Kincade, 379 F.3d 813 (9th Cir. 2004), is persuasive. In Kincade, the defendant robbed a bank, served time in a federal prison, and was released on probation. Subsequently, the defendant's probation officer asked him to submit a DNA sample pursuant to the federal DNA Act. The defendant refused, arguing that the Act violated his Fourth Amendment right to be free from unreasonable searches and seizures. The ninth circuit disagreed, distinguishing between suspicionless searches of a probationer, who has a reduced expectation of privacy, and a member of the general public, who enjoys the full panoply of Fourth Amendment rights. The court held that in the case of probationers, the reasonableness of the search should be analyzed under the traditional balancing test while special needs analysis should be reserved for warrantless searches of the ordinary citizen. If the court in Kincade chose to apply the balancing test for a person on probation, then we believe the balancing test is also preferable for felons serving prison terms. Therefore, in light of Kincade, we hold that traditional balancing applies in this case. See also State v. Lynn Ray Bracy, No. 97-cr-078-JEG, 2005 U.S. Dist. LEXIS 6468 (S.D. Iowa Apr. 14, 2005) (noting that the majority of the courts have used the balancing test to rule on the constitutionality of the federal DNA Act).

The appellant relies on State v. Hicks, 55 S.W.3d 515 (Tenn. 2001), to support his claim that the collection of his DNA for a DNA database constitutes an unreasonable search. In Hicks, our supreme court addressed the constitutionality of drivers' license roadblocks under Article I, Section

7 of the Tennessee Constitution. The court determined that the balancing test used in State v. Downey, 945 S.W.2d 102 (Tenn. 1997), is to be applied to "all cases involving constitutional challenges to roadblocks or checkpoints under the Tennessee Constitution." Id. at 524. Nevertheless, the supreme court went on to say that "in no case may the State establish a roadblock merely 'to detect evidence of criminal wrongdoing.'" Hicks, 55 S.W.3d at 530 (quoting City of Indianapolis v. Edmond, 531 U.S. 32, 41, 121 S. Ct. 447, 454 (2000)). Relying on this statement, the appellant argues that "if a search or seizure is done without any individualized suspicion, it is invalid if done to detect evidence of ordinary criminal wrongdoing." However, the appellant's reliance on Hicks is misplaced. Hicks involved searches of the general public. The case before us involves searches of prisoners, who have a reduced expectation of privacy and do not enjoy the same panoply of rights as the general public.

Turning to the case before us, the factors to be considered in traditional balancing analysis include the strengths of the plaintiff's privacy interest, the nature and scope of the intrusion, and the government interest at stake. Regarding the plaintiff's privacy interest, we have already stated that prisoners have a reduced expectation of privacy. See Lonnie Turner, No. M1999-01127-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 419, at *47 (Nashville, June 5, 2001) (citing Hudson v. Palmer, 468 U.S. 517, 525-24, 104 S. Ct. 3194, 3199 (1984)); see also Groceman v. United States DOJ, 354 F.3d 411, 413 (5th Cir. 2004) (stating that "like fingerprinting, collection of a DNA sample for purposes of identification implicates the Fourth Amendment, [and] persons incarcerated after conviction retain no constitutional privacy interest against their correct identification); Jones v. Murray 962 F.2d 302, 306 (4th Cir. 1992) (stating that [w]ith the person's loss of liberty upon arrest comes the loss of at least some, if not all, rights to personal privacy otherwise protected by the Fourth Amendment"). Next, in collecting the DNA sample, the nature and scope of the intrusion is minimal. Turner, No. M1999-01127-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 419, at *47 (stating that "the collection of a blood sample is a minimal intrusion and has become routine"). Finally, the state's interest in solving past and future crimes and exonerating individuals who have been wrongly convicted of crimes is great. Therefore, under the balancing test, we conclude that Tennessee's interest in the collection of blood pursuant to Tennessee Code Annotated section 40-35-321(b) outweighs a defendant's privacy interest and the minor intrusion caused by the taking of the blood sample. The statute does not violate our federal or state constitutions. Given this holding, the issue of the appellant's consent is irrelevant.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the trial court's denial of the appellant's motion to suppress.

_____
NORMA McGEE OGLE, JUDGE