944 So.2d 546 (2006)
Shanika THOMPSON, Appellant,
v.
STATE of Florida, Appellee.
No. 4D05-4709.
District Court of Appeal of Florida, Fourth District.
December 27, 2006.
Carey Haughwout, Public Defender, and James W. McIntire, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Heidi L. Bettendorf, Assistant *547 Attorney General, West Palm Beach, for appellee.
GROSS, J.
Shanika Thompson appeals her conviction for second-degree murder and contends that the evidence was insufficient to support the verdict. We affirm.
This case arose out of an argument that occurred between appellant and the victim, Alonso Meyers, which ended with a shooting at Meyers's home on November 8, 2004.
Meyers was an 87 year old man. Although he was able to cook for himself and drive a car, he was unable to stand on his own without the aid of a walker or cane.
About five months before the shooting, appellant's twin sister, Shamika Thompson, moved in with Meyers to help him out around the home. The house was a three bedroom, two bath house with a garage. The door from the garage opened into Meyers's master bedroom; to get from the garage to the living room, one had to pass through the bedroom. Two other bedrooms were located on the other side of the living room. Shamika occupied one of those bedrooms.
At the time of the shooting, appellant was six months pregnant. She was also romantically involved in a relationship with Margaret Fullwood. On the day of the shooting, appellant, Fullwood, and Shamika went to Kyana Cook's apartment to watch movies and talk. Cook's apartment was a three minute walk from Meyers's house. At Cook's apartment, appellant and Fullwood got into an argument. Cook told appellant to leave her apartment. Shamika followed appellant and Fullwood outside into the yard. Appellant was so mad at Fullwood that she grabbed Fullwood's purse and dumped the contents onto the ground. Fullwood then jumped on appellant, who yelled to Shamika to get Fullwood off of her. Shamika peeled Fullwood off of appellant.
To avoid further problems, Shamika told Fullwood to walk with her to Meyers's house. She suggested that Meyers give Fullwood a ride home. Shamika told appellant to stay where she was. However, as Shamika and Fullwood walked to Meyers's house, appellant followed behind them.
When Shamika reached Meyers's home, Meyers opened the garage door for her and Fullwood. Appellant followed Shamika inside and sat in Meyers's bedroom.
Shamika told Meyers that appellant and Fullwood had gotten into a fight. Meyers agreed to drive Fullwood home. Five months before, Fullwood told appellant that Meyers had offered Fullwood money for sex. At that time, appellant did not exhibit any hostility because of the solicitation. Meyers then asked Shamika to take Fullwood into her bedroom until Meyers was ready to go.
Shamika walked Fullwood across the living room to her bedroom. Then, she returned to Meyers's bedroom. Appellant and Meyers conversed in a normal tone of voice. During the conversation, appellant got up and tried to walk over to Shamika's bedroom to talk to Fullwood. Meyers stopped her and asked her where she was going. Meyers prevented appellant from going to speak to Fullwood.
Meyers told appellant to leave or he would kill her. At least six times, Shamika also told appellant to leave. With the assistance of his walker, Meyers went to his drawer and retrieved a gun from a bag.
Meyers, leaning on his walker, slowly approached appellant with the gun. Meyers never pointed the gun at appellant. He moved his hand back and forth, bending his arm at the elbow, telling appellant *548 to "Get out. Get out." As he was waving the gun, Meyers used his left hand to support himself with the walker.
Shamika asked appellant to leave, but appellant said she was calling the police. Appellant told Meyers that he was going to jail for pulling out a gun. As appellant was trying to call the police, Meyers poked her pregnant stomach three times with his cane and told her to put the phone down.
Appellant became angry. Suddenly, she dropped the phone and rushed Meyers. Shamika ran behind appellant and tried to pull her off Meyers. Upon hearing all the commotion, Fullwood ran in from the other bedroom and tried to get appellant off of the old man. Meyers lost his balance and Fullwood helped him to the floor. At this point, Meyers had the gun in his pocket.
While trying to hold appellant back from Meyers, Shamika told appellant to "just go." However, she was "hyped." She approached Meyers and took the gun out of his pocket. Still angry at Meyers, appellant shot Meyers in the abdomen as he lay on the ground. When the gun went off, Shamika was in the garage, behind appellant, no longer holding on to her. Shamika had moved away from her sister because she did not want to get hurt by the gun in her sister's hands.
After the shooting, Shamika went "ballistic" and started walking around the garage in circles. Fullwood came out of the house, screaming and yelling. Appellant fled the scene.
Shamika called the police and told the dispatcher that she needed an ambulance. She informed the dispatcher that her sister, who was pregnant, had shot Meyers; she said that appellant had gotten into a fight, that the gun was pulled on her first, and then appellant somehow took the gun and shot Meyers. She further stated that appellant had left and that she did not know where she had gone. Shamika told the dispatcher that Meyers was talking, but that he was bleeding badly.
Meyers underwent surgery. Complications caused Meyers to be bedridden until his death, two months after the shooting. The medical examiner identified the cause of death as a pulmonary embolism, a complication of the gunshot wound.
On appeal, appellant argues that the trial judge erred in denying her motion for judgment of acquittal on the grounds that the state failed to prove that appellant acted with a depraved state of mind and that the evidence showed that the shooting was an accident, hence an excusable homicide.
The standard of review applicable when reviewing a motion for judgment of acquittal is de novo. Maglio v. State, 918 So.2d 369, 374 (Fla. 4th DCA 2005). "Generally, on a motion for judgment of acquittal, the court should not grant the motion unless, when viewed in a light most favorable to the state, the evidence does not establish the prima facie evidence of guilt." Dupree v. State, 705 So.2d 90, 93 (Fla. 4th DCA 1998). When moving for a judgment of acquittal based on the insufficiency of the evidence, the defendant admits not only the facts adduced in evidence, but also every conclusion favorable to the state that a jury might fairly and reasonably infer from the evidence. Boyce v. State, 638 So.2d 98, 99 (Fla. 4th DCA 1994). As the supreme court explained in Lynch v. State, 293 So.2d 44, 45 (Fla.1974):
The courts should not grant a motion for judgment of acquittal unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law. Where there is room for a difference of opinion between reasonable men as to the proof of facts from which *549 an ultimate fact is sought to be established, or where there is room for such differences as to the inferences which might be drawn from conceded facts, the Court should submit the case to the jury for their finding, as it is their conclusion, in such cases, that should prevail and not primarily the views of the judge.
The concern of an appellate court is not the weight of the evidence, but its legal sufficiency, which is whether there is substantial, competent evidence to support the verdict. See Tibbs v. State, 397 So.2d 1120, 1123 (Fla.1981).
An act done with a "depraved mind" for the purpose of second-degree murder is one "done from ill will, hatred, spite or an evil intent." Fla. Std. Jury Instr. (Crim.) § 7.4 (5th ed. 2005). Here, there was competent substantial evidence to support the conclusion that appellant acted with a depraved mind. See Gibbs v. State, 904 So.2d 432, 435 (Fla. 4th DCA 2005) (finding evidence sufficient to support a finding that defendant evinced depraved mind, so as to support conviction for second-degree murder where eyewitness evidence revealed that defendant pulled out gun, pointed it at victim, and admitted that he might have said, "If you don't back up, I'll shoot you."); Smalley v. State, 889 So.2d 100, 103 (Fla. 5th DCA 2004) (finding evidence of a depraved mind for the purposes of a prosecution for second-degree murder when defendant testified that he was being threatened by the victim and another man, that he was hit in the face, and the gun "went off," but other witnesses testified that victim was not threatening the defendant).
During the unfortunate fight, Meyers had put the gun away and was on the ground when the appellant "rushed him" and snatched the gun out of his pocket. At that point, the 87 year old Meyers, who could not stand without a walker, was as defenseless as a turtle. Larsen v. State, 485 So.2d 1372, 1373 (Fla. 1st DCA 1986) (acknowledging that age and physical characteristics may be taken into account in determining whether the defendant evinced a depraved mind). Appellant shot Meyers because she was angry that he poked her pregnant stomach with his cane, interfered in her fight with her girlfriend Fullwood, and, perhaps, for offering Fullwood money for sex. At the time of the shooting, Meyers was no threat to appellant.
We also reject appellant's claim that the trial court erred in denying her motion for judgment of acquittal because the evidence "showed that Meyers was shot by accident and misfortune," so that the homicide was excusable under section 782.03, Florida Statutes (2004). Appellant did not raise this issue at trial, so it is not preserved for appellate review. See § 924.051(3), Fla. Stat. (2004); Fla. R.Crim. P. 3.800(b). In any event, the record discloses enough evidence to create a jury question as to whether the shooting was accidental.
Affirmed.
SHAHOOD and HAZOURI, JJ., concur.