668 So.2d 209 (1996)
SUDDATH VAN LINES, INC., Appellant,
v.
STATE of Florida, DEPARTMENT OF ENVIRONMENTAL PROTECTION, Appellee.
No. 94-1759.
District Court of Appeal of Florida, First District.
January 16, 1996.
Rehearing Denied March 12, 1996.
*210 Michael E. Demont and Lee S. Haramis of Kirschner, Main, Petrie, Graham & Tanner, Jacksonville, for Appellant.
Jefferson M. Braswell, Assistant General Counsel, Florida Department of Environmental Protection, Tallahassee, for Appellee.
ZEHMER, Chief Judge.
Suddath Van Lines, Inc. appeals from the final order of the Secretary of the Department of Environmental Protection denying Suddath's application for participation in the Abandoned Tank Restoration Program (ATRP).[1] For the following reasons, we affirm.
Suddath, a common carrier primarily engaged in the business of providing moving services, owns a facility on Stevens Street in Jacksonville, Florida, that at one time contained underground petroleum storage tanks (UST's) used to fuel Suddath's moving vans. However, when Suddath received notice from the Department of Environmental Regulation that the UST's were in violation of certain *211 environmental regulations requiring that they be abandoned, the UST's were taken out of service and removed from the facility on September 19, 1989.
On September 20, 1989, the day after the clean-up of the UST's was completed, Suddath purchased two above-ground storage tanks (AST's) again for the purpose of storing fuel on the premises for its business operations. The AST's were built on skids and designed to be portable, but, instead of moving the AST's between its several facilities as initially intended, Suddath allowed the AST's to remain on the Stevens Street premises for eleven months surrounded by protective concrete posts.
In the summer of 1990, Suddath learned for the first time that the original UST's had caused ground contamination. In light of this information, Suddath removed the AST's from the Stevens Street location in November 1990. At that time, Suddath decided to permanently discontinue the use of petroleum products at that location.
In the meantime, Suddath had submitted an application to the Department in October for approval of its participation in the Abandoned Tank Restoration Program (ATRP) to obtain financial assistance for costs Suddath expected to incur in cleaning up the ground contamination caused by the abandoned UST's. On February 24, 1993, the Department issued a letter denying Suddath eligibility in the program due to the presence of the AST's at the time of application, since eligibility under the ATRP "is restricted to sites that are no longer in business of storing petroleum products for consumption, use or sale and have not been so since March 1, 1990." (Emphasis added.) Following receipt of this letter, Suddath timely filed a petition for administrative hearing requesting that the Stevens Street premises be included in the program.
The stipulated legal issue argued before the hearing officer was whether Suddath was eligible for participation in the ATRP under the provisions of subsection 376.305(7), Florida Statutes (Supp.1992), and Florida Administrative Code Rule 17-769.800(3). Subsection 376.305(7) states as follows:
(7) The Legislature created the Abandoned Tank Restoration Program in response to the need to provide financial assistance for cleanup of sites that have abandoned petroleum storage systems. For purposes of this subsection the term "abandoned petroleum storage system" shall mean any petroleum storage system that has not stored petroleum products for consumption, use, or sale since March 1, 1990. The department shall establish the Abandoned Tank Restoration Program to facilitate the restoration of sites contaminated by abandoned petroleum storage systems.
(a) To be included in the program:
1. An application must be submitted to the department by June 30, 1992, certifying that the system has not stored petroleum products for the consumption, use, or sale at the facility since March 1, 1990.
2. The owner or operator of the petroleum storage system when it was in service decided not to continue in business for consumption, use, or sale of petroleum products at that facility....
(Emphasis added.) The Department's rule 17-769.800(3), implementing the above statutory subsection, provides in relevant part:
(3) Eligibility for the Abandoned Tank Restoration Program.
(a) To be eligible for the Abandoned Tank Restoration Program, the current owner or operator of a property which contains or contained an abandoned storage system must:
1. Demonstrate that the owner or operator of the petroleum storage system when it was in service decided not to continue in business for consumption, use, or sale of petroleum products at that facility.
2. Have documented contamination from the abandoned petroleum storage system;
3. Have not stored petroleum products for consumption, use or sale at that facility after March 1, 1990....
(Emphasis added.)
"Facility" is defined in subsection 376.301(7) in pertinent part as follows:

*212 (7) "Facility" means a nonresidential location containing, or which contained, any underground stationary tank or tanks which contain hazardous substances or pollutants..., or any aboveground stationary tank or tanks which contain pollutants....
(Emphasis added.)
Suddath's argument focused on the interpretation of the terms "facility" and "site," urging that when it removed the UST's from the Stevens Street premises, it met the criteria of rule 17-769.800(3)(a)1., by discontinuing the use of petroleum products at that facility. Suddath's argument is predicated on the notion that the terms "petroleum storage system" and "facility" can be used interchangeably to support the conclusion that the AST's constituted a distinct and separate "facility" from the UST's, so that the storage of petroleum products in the AST's after the statutory deadline of March 1, 1990, should not have affected Suddath's eligibility for participation in the ATRP relevant to the UST's. Additionally, Suddath argued that the presence of the AST's after March 1, 1990, should not have hindered its participation in the program because the AST's were not "stationary" systems as contemplated in subsection 376.301(7).
Both the hearing officer and the Secretary rejected Suddath's proposed interpretations of the statutes and rule. We quote with approval that portion of the Secretary's final order specifically addressing these arguments:
Suddath contends that the Legislature's use of the term "or" in the definition of "facility" indicates that a facility is either a location containing UST's or AST's, but not both. The case law indicates that the term "or" shall generally be construed as being disjunctive, and that it normally indicates alternatives. Sparkman v. McClure, 498 So.2d 892 (Fla.1986); Telophase Society of Florida, Inc. v. State Board of Funeral Directors and Embalmers, 334 So.2d 563 (Fla.1976); McKenzie Tank Lines, Inc. v. McCauley, 418 So.2d 1177 (Fla. 1st DCA 1982). However, the case law also indicates that there are instances in which the conjunctive "or" is held equivalent to the copulative conjunction "and," and such meaning is often given in order to effectuate the legislative intent in enacting a statute. Dotty v. State, 197 So.2d 315 (Fla. 4th DCA 1967). Such an interpretation is particularly applicable when a contrary construction would defeat the evident purpose of the legislation. Id. at 318. The interpretation that eligibility in the ATRP should be limited to sites which contain only UST's or only AST's, but not both, would certainly defeat the legislative purpose.
A more reasonable interpretation of Section 376.301(4), Florida Statutes (Supp. 1992), is that the proper measure for eligibility in the ATRP is not whether the facility contains UST's, AST's or both, but rather whether it is a "nonresidential location" which has been contaminated by one or more petroleum storage systems. § 376.305(7), Fla.Stat. (Supp.1992). I find that this interpretation by the Department is reasonable and consistent with case law. If an agency's interpretation of a rule is one of several permissible interpretations, the agency's interpretation must be upheld despite the existence of other reasonable alternatives. Pershing Indus. v. Department of Banking and Finance, 591 So.2d 991 (Fla. 1st DCA 1991).
Finally, Suddath argues that the AST's do not constitute a "facility" or the relevant "petroleum storage system" because they are not "stationary," as required by Section 376.301(17), Florida Statutes. The term "stationary" is not currently defined in the applicable statutes or rules, except for the exemption in Rule 17-762.300 discussed below. Suddath correctly points out that absent a statutory definition, words should be given their plain and ordinary meaning, and one looks to the dictionary for the plain and ordinary meaning of words. Specialty Restaurants Corp. v. City of Miami, 501 So.2d 101, 102 (Fla. 3rd DCA 1987); State Department of Business Reg. v. Salvation Ltd., 452 So.2d 65, 67 (Fla. 1st DCA 1984). A review of the dictionary definition of stationary indicates that the term is defined in the Oxford Dictionary as "remaining in one place, not moving" and "not meant to be moved, not *213 portable;" and in the Webster's Dictionary as "fixed, not portable; exhibiting no change." (Pet.Ex. 15, 16) The definitions imply both that the object is not in motion and that the object is not capable of being moved. It is, therefore, reasonable to take into account the amount of time that the object "remained in one place, not moving; exhibiting no change" in determining whether the object is stationary. The testimony provided by Suddath established that, while the AST's were capable of being moved, they were not moved for approximately one year. Thus, a determination that the AST's were stationary within the meaning of the statute is sound.
The Secretary further observed that the ordinary use of the term "stationary" comports with rule 17-762.300(2)(b), Florida Administrative Code, exempting above-ground tanks from regulation under that chapter as long as the tanks are "moved to a different location at least every 180 days." In this case, however, the Secretary noted that Suddath's AST's remained in the same location for over 180 days, barricaded by concrete posts. The Secretary concluded:
Based on the above-cited definition of "facility," Suddath's business location and property is clearly the type of nonresidential location which the Legislature contemplated. The entire parcel of land where Suddath conducted its business must be deemed to be a single facility which contained two systems at different periods of time, a UST system and an AST system. In light of the definition of facility it is clear that the term facility does not contemplate only a specific area (or a particular tank) within a parcel of property upon which one integrated business operation is conducted. Rather, "facility" means a nonresidential location at which there may be UST's or AST's or both, which are used for storing petroleum. It is not reasonable to interpret the above statutory definition of facility to mean one specific spot, where the storage tanks were located only 20 feet apart, had the same owner, were on a single parcel of land, serviced the same vehicles, and contained the same kind of fuel. See Webbs Wood Products, Inc. v. Department of Environmental Protection, 16 F.A.L.R. 758 (DEP February 21, 1994). These considerations reasonably support the Department's interpretation that Suddath was a single facility having two systems at different times. Therefore, because Suddath continued in the business of storing petroleum products for consumption and use after March 1, 1990, Suddath is precluded from participating in the ATRP. Rule 17-769.800(3)(a)3., F.A.C. (1993).
We affirm the Secretary's final order. As the Secretary noted on more than one occasion in the order, "an agency's construction of its governing statutes and rules will be upheld unless clearly erroneous." Pershing Industries v. Department of Banking and Finance, 591 So.2d at 993. There is nothing in the present record demonstrating that the Department's interpretation of the relevant statutes and rules is clearly erroneous. Rather, the record substantially supports the Secretary's conclusion that the Department's interpretation is reasonable and consistent with prior agency action (Webbs Wood Products, Inc.). It also firmly supports her finding that Suddath's Stevens Street facility continued in the business of storing petroleum products for consumption and use with the two AST's after March 1, 1990. Because fuel operations at the facility as a whole is the key to eligibility under subsection 376.305(7)(a)2., and rule 17-769.800(3)(a), and not the operation of one particular tank or petroleum storage system, the Secretary correctly denied Suddath's application for participation in the ATRP.
Suddath also raises a constitutional challenge in this court to the Department's interpretation of the applicable statutes and rules. We find this argument to be without merit. The Department did not employ incipient policy in determining that Suddath is ineligible for participation in the ATRP. Nor is its interpretation of the statutes and rules vague, arbitrary or capricious. To the contrary, the Department properly applied the facts of the case to the applicable law based on a permissible and reasonable interpretation of that law.
*214 For the foregoing reasons, the final order under review is AFFIRMED.
ALLEN and KAHN, JJ., concur.
NOTES
[1] § 376.305(7), Fla.Stat. (Supp.1992); Fla.Admin.Code R. 17-769.800 (1993). Although an issue was raised by Suddath below regarding whether the 1991 version of the relevant statute and rule applied instead of the 1992 and 1993 amended versions, it urged in its exceptions to the recommended order the applicability of the amended versions. In its initial brief, Suddath again refers to the amended versions of the statute and rule, and notes that the 1993 amendments to the rule did not result in any substantive changes. Accordingly, reference in this opinion will be to the 1992 and 1993 versions of the statute and rule, respectively. (In March 1995, the applicable rules were transferred to Title 62 of the Florida Administrative Code. Thus, for example, rule 17-769.800 now appears as rule 62-769.800.)