LaROSE, Judge.
Duke’s Steakhouse Fort Myers, Inc., appeals the South Florida Water Management District’s (SFWMD) final “order approving an Environmental Resource Permit (ERP) for G5 Properties, LLC. Duke’s argues that SFWMD erroneously approved the permit after an administrative law judge recommended denial. SFWMD properly construed the Florida Administrative Code to allow issuance of a permit where the proposed project results in a “net improvement” to water quality. We affirm.
G5 acquired two adjacent parcels of property — a north parcel and a south parcel — just north of Duke’s’ property. G5 planned to redevelop the property primarily by constructing a two-story medical office building on the south parcel. To proceed, G5 had to comply with Florida Administrative Code Rule 40E-4.301, that provides, in pertinent part, as follows:
40E-4.301. Conditions for Issuance of Permits.
(1) In order to obtain a standard general, individual, or conceptual approval permit under this chapter or Chapter 40E-40, F.A.C., an applicant must provide reasonable assurance that the construction, alteration, operation, maintenance, removal or abandonment of a surface water management system:
*14 (a) Will not cause adverse water quantity impacts to receiving waters and adjacent lands;
(b) Will not cause adverse flooding to on-site or off-site property;
(c) Will not cause adverse impacts to existing surface water storage and conveyance capabilities;
(e) Will not adversely affect the quality of receiving waters such that the water quality standards set forth in Chapters 62-4, 62-302, 62-520, 62-522 and 62-550, F.A.C., incorporated by reference in paragraph 40E-4.091(l)(d), F.A.C., including any antidegradation provisions of paragraphs 62-4.242(l)(a) and (b), subsections 62-4.242(2) and (3), and Rule 62-302.300, F.A.C., and any special standards for Outstanding Florida Waters and Outstanding National Resource Waters set forth in subsections 62-4.242(2) and (3), F.A.C., will be violated;
(f) Will not cause adverse secondary impacts to the water resources;
(i) Will be capable, based on generally accepted engineering and scientific principles, of being performed and of functioning as proposed;
(j) Will be conducted by an entity with the sufficient financial, legal and administrative capability to ensure that the activity will be undertaken in accordance with the terms and conditions of the permit, if issued....
(2) If the applicant is unable to meet water quality standards because existing ambient water quality does not meet standards, the applicant must comply with the requirements set forth in subsection 4.24.5 of the “Basis of Review for Environmental Resource Permit Applications Within the South Florida Water Management District,” incorporated by reference in paragraph 40E-4.091(l)(a), F.A.C.
In assessing an applicant’s compliance, SFWMD looks to the “standards and criteria, including the mitigation provisions, and the provisions for elimination or reduction of impacts,” set forth in. the Basis of Review for Environmental Resource Permit Applications (BOR) incorporated by reference in Florida Administrative Code Rule 40E-4.091(l)(a).[1] Fla. Admin. Code R. 40E-4.30K3).[2]
SFWMD approved G5’s application and issued the ERP. After G5 completed its project, Duke’s contested issuance of the ERP; asked SFWMD to deny, revoke, or modify the permit; and requested a formal administrative hearing.[3] See § 120.569(2)(a), Fla. Stat. (2011); Fla. Ad *15 min. Code R. 28-106.201. Following a hearing before the Department of Administrative Hearings, see § 120.569(2)(a), the Administrative Law Judge (ALJ) submitted a recommended order to SFWMD. See §§ 120.669@)(O(2), 120.57(l)(k). SFWMD staff, G6, and Duke’s also submitted recommended orders.
The ALJ concluded that G5 provided reasonable assurances that its surface water management system functioned properly. See R. 40E-4.301(l)(i). He also found that the redevelopment did not cause standing water on the Duke’s property; rather, Duke’s’ failure to maintain its own stormwater drains caused flooding. See R. 40E-4.301(l)(b). Because G5 added water quality storage and treatment for the southern parcel and filters for the drains on its northern parcel, the ALJ observed that the redevelopment resulted in a net improvement in water quality, storage, and treatment.
The ALJ found that G5 met all permitting requirements except BOR sections 5.2.1(a) (onsite volumetric detention requirements for water quality) and 7.4 (stormwater wet retention/detention areas dimensional criteria). G5 and SFWMD staff contended that the ERP should issue because, by effecting a net improvement in water quality, the project did not violate water quality standards. The ALJ, however, recommended denial of the permit for “failure to meet BOR requirements as to water quality storage and treatment.” He concluded that neither G5 nor SFWMD staff cited sufficient authority for a “net improvement” standard or other exception to the BOR requirements. G5 and SFWMD staff filed exceptions to the recommended order. See § 120.57(l)(k); Fla. Admin. Code R. 40E-1.564 (repealed May 27, 2012); Fla. Admin. Code R. 28-106.217.
The SFWMD board rejected the ALJ’s recommendation and issued a final order approving the ERP. On appeal, Duke’s argues that SFWMD improperly reweighed the evidence before the ALJ and improperly rejected or modified the ALJ’s factual findings. See § 120.57(l)(i) (prohibiting agency from modifying or rejecting ALJ’s findings of fact unless it explains why they were not based on competent, substantial evidence). We conclude that Duke’s improperly labels conclusions of law as findings of fact.
SFWMD’s board did not reweigh the evidence or modify the ALJ’s findings of fact. Rather, it rejected the ALJ’s interpretation of the applicable Florida Administrative Code — specifically, the ALJ’s conclusion of law that G5 did not meet BOR section 5.2.1(a) water quality requirements. Section 120.57(1)(J) provides that an agency may reject or modify the ALJ’s conclusions of law and interpretation of administrative rules, so long as its determination is as or more reasonable than those of the ALJ. Beyond peradventure, an agency bears the primary responsibility to interpret statutes and rules within its regulatory expertise and jurisdiction. See, e.g., Pub. Emps. Relations Comm’n v. Dade Cnty. Police Benevolent Ass’n, 467 So.2d 987, 989 (Fla.1985). An agency’s interpretation of such statutes and rules does not have to be the only reasonable interpretation — only a permissible one, see, e.g., Suddath Van Lines, Inc. v. Dep’t of Envtl. Prot., 668 So.2d 209, 212 (Fla. 1st DCA 1996), and should not be overturned unless clearly erroneous. See, e.g., Collier *16 County Bd. of County Comm’rs v. Fish & Wildlife Conservation Comm’n, 993 So.2d 69, 72 (Fla. 2d DCA 2008).
SFWMD concluded, as a matter of law, that “[r]ule 4.301 (l)(e) (no adverse affect on quality of receiving waters violating quality standards), and BOR sections 1.3 [4] (district may consider alternative performance criteria in particular cases) and 5.2.1(a), allow [SFWMD] to approve ERP applications involving redevelopments provided there are reasonable assurances of net improvement to water quality treatment” meeting the overall objectives of Chapter 373. These BOR sections provide as follows:
Section 1.3 Criteria Objectives
The criteria contained herein were established with the primary goal of meeting District water resource objectives as set forth in Chapter 373, F.S. Performance criteria are used where possible. Other methods of meeting overall objectives and which meet the conditions for issuance set forth in Rules 40E-4.301 and 40E-4.302, F.A.C., will be considered by staff or presented to the District Governing Board, or its designee, for consideration. Compliance with the criteria herein constitutes a presumption that the project proposal is in conformance with the conditions for issuance set forth in Rules 40E-^4.301 and 40E-4.302, F.A.C.
5.2.1 Volumetric Requirements
(a) Retention, detention, or both retention and detention in the overall system, including swales, lakes, canals, greenways, etc., shall be provided for one of the three following criteria or equivalent combinations thereof:
2. Dry detention volume shall be provided equal to 75 percent of the above amounts computed for wet detention.
3. Retention volume shall be provided equal to 50 percent of the above amounts computed for wet detention. Retention volume included in flood protection calculations requires a guarantee of long term operation and maintenance of system bleed-down ability. Example of such guarantee include evidence of excellent soil percolation rates, such as coastal ridge sands, or an operations entity which specifically reserves funds for operation, maintenance and replacement (example: Orange County MSTU). (NOTE: Orange County subdivision regulation criteria for retention — published by Orange County in Orange County Subdivision Regulations — may be utilized for Orange County MSTU projects in lieu of District retention criteria where retention volumes exceed one half inch. This information is hereby published by reference and incorporated into this rule.)
SFWMD correctly concluded that BOR section 7.4 did not apply because the G5 project included only a dry stormwater detention system.
SFWMD properly construed the Florida Administrative Code to allow issuance of a permit where the proposed redevelopment project results in a “net improvement” to water quality. We affirm SFWMD’s final order granting G5’s ERP.
Affirmed.
KHOUZAM and MORRIS, JJ., Concur.

. 40E-4.091 Publications, Rules and Inter-agency Agreements Incorporated by Reference.
(1) The following publications, rules and interagency agreements are incorporated by reference into this chapter, Chapters 40E-40, 40E-4I and 40E-400, F.A.C.:
(a) "Basis of Review for Environmental Resource Permit Applications within the South Florida Water Management District-7-22-07”.

. The standards and criteria, including the mitigation
provisions, and the provisions for elimination or reduction of impacts, contained in the "Basis of Review for Environmental Resource Permit Applications Within the South Florida Water Management District,” incorporated by reference in paragraph 40E-4.091(l)(a), F.A.C., shall determine whether the reasonable assurances required by subsection 40E-4.301(1) and Rule 40E-4.302, F.A.C., have been provided.
Fla. Admin. Code R. 40E-4.301(3).

.Duke’s asserted that its petition was timely because it had no notice of the permit applications until SFWMD had already approved them. See § 373.116(2), Fla. Stat. (2011) (requiring SFWMD notice in newspaper); § 373.118(3) (allowing SFWMD to establish *15 alternative notice requirements taking into account proposed project’s effect on other persons, in lieu of publication); Gardner v. Sch. Bd. of Glades Cnty., 73 So.3d 314, 315 (Fla. 2d DCA 2011) (holding affected party must receive sufficient notice to commence running of the time period to seek review) (citing Henry v. Dep’t of Admin., Div. of Retirement, 431 So.2d 677, 680 (Fla. 1st DCA 1983)). This assertion was not challenged.

. Paragraph 7 of G5’s Exception to Recommended Order cited section 1.3 of the BOR as authority providing SFWMD with the flexibility to use a "net improvement” standard for water quality on redevelopment projects.