# Third District Court of Appeal

## State of Florida

Opinion filed May 16, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-2320
Lower Tribunal No. 14-53-P
_____

**Ryan Charles Lindemuth,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Monroe County, William R. Ptomey, Jr., Judge.

Carlos J. Martinez, Public Defender, and Stephen J. Weinbaum, Assistant Public Defender, for appellant.

Pamela Jo Bondi, Attorney General, and Jeffrey R. Geldens, Assistant Attorney General, for appellee.

Before SALTER, EMAS and FERNANDEZ, JJ.

FERNANDEZ, J.

Ryan Charles Lindemuth appeals the trial court's conviction and sentence.

We affirm, as the trial court did not err in its use of the definition of the word

"entice" in its jury instruction on the charge of interfering with the custody of a minor, pursuant to section 787.03(1), Florida Statute (2014).

Lindemuth was arrested and charged by Information with one count of interfering with the custody of a minor. The case went to a jury trial.

At trial, the victim, Joshua Gregis, told the jury what happened on the day of the crime, which occurred when Gregis was fourteen-years-old. On the afternoon in question, Gregis rode the bus home from school in the afternoon and arrived about 2:40 p.m. or 2:50 p.m. He was planning on going to his friend's house to do homework. Gregis informed his mother of his plans and then left on his bicycle.

As he was riding, Gregis noticed Lindemuth's car and felt worried because he did not know Lindemuth. Gregis had his cell phone in his hand. Lindemuth was in his car, following behind Gregis, when he drove up right next to Gregis and asked to use his phone. Lindemuth spoke to Gregis through the passenger side of the vehicle. Gregis said no.

Lindemuth continued to follow Gregis, even as Gregis turned onto the street toward his friend's house. Gregis then moved his bicycle into the left-hand lane to allow Lindemuth's car to pass, but Lindemuth came up alongside Gregis and veered the car to get closer to Gregis. The vehicle crossed the yellow line dividing the lanes of the road. Gregis was on the edge of the lane, as far over as he could be without entering someone's front yard. Gregis got off his bicycle and stopped.

2

Lindemuth approached and again asked to use Gregis's phone. Gregis said no. Lindemuth then showed Gregis a bunch of money/cash, told him he could hold the cash while Lindemuth used the phone, and told Gregis he was not going to steal his phone. Gregis again said no, and Lindemuth told him, "You can get in and hold the money." Lindemuth said he was not going to steal Gregis's phone and that he just needed to call a buddy of his. Lindemuth appeared upset and then sped away in his vehicle. Gregis arrived at his friend's house and told his friend's mother what had happened. She said the police should be called.

Gregis's father, Anthony Gregis, testified at trial that the family gave no one standing authority to take custody of their child during the afternoons after school. He stated that when he arrived home after work, he saw his son getting out of a police car, and Gregis informed him of the incident with Lindemuth. Gregis's mother, Angela Gregis, testified that she gave her son permission to go to his friend's house after school and that he did not have permission to get into Lindemuth's car.

Lindemuth was thereafter arrested and charged with one count of interfering with the custody of a minor, under section 787.03(1), Florida Statutes (2014). The jury convicted him of that offense, and the trial court sentenced him to five years probation.

3

On appeal, Lindemuth contends, in part, that he committed no crime because the statute is inapplicable to the evidence the jury heard, and the jury instruction's definition of "entice" led the jury to erroneously convict him. We disagree.

Section 787.03(1) provides:

> Whoever, without lawful authority, knowingly or recklessly takes or entices, or aids, abets, hires, or otherwise procures another to take or entice, any minor or any incompetent person from the custody of the minor's or incompetent person's parent, his or her guardian, a public agency having the lawful charge of the minor or incompetent person, or any other lawful custodian commits the offense of interference with custody and commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

We agree with the State that section 787.03(1) applies to a situation such as the one before us, where a stranger attempts to get a minor into his car by offering him money. The statute does not require the minor to be physically taken from his parents' custody.

Section 787.03(1) prohibits interference with parental custody by a person who is not a parent or lawful custodian of the minor child in question, without the lawful authority to do so. Parents have a legal right to the custody of their minor children. State ex rel. Sparks v. Reeves, 97 So. 2d 18, 20 (Fla. 1957). Custody is more than just being in physical custody of a minor child at a given moment in time. A child is in his or her parent's custody at all times because the meaning of custody encompasses other responsibilities relating to the protection, supervision, welfare, and care of a child. For example, parental custody includes the decision-

4

making authority to decide where the child lives, health care issues, where the child goes to school, and what, if any, religion the child practices. See §§ 61.13(2), Fla. Stat. (2018); Abbo v. Briskin, 660 So. 2d 1157, 1161 (Fla. 4th DCA 1995). As such, parental custody is not limited to just being in physical control of a child.

Lindemuth further contends that the statute is vague and that the definition of "entice" confused the jury. However, we find that section 787.03(1) is applicable to the case before us, where Lindemuth enticed Gregis to enter his car without parental permission to do so, thus interfering with parental custody. See Leding v. State, 725 So. 2d 1221 (Fla. 4th DCA 1999) (affirming a conviction for enticing children into a car, where the children stayed in the front yard and did not enter the defendant's car).

The trial court here instructed the jury that entice meant "to lure, induce, tempt, incite, or persuade a person to do a thing." The trial court wanted it to be clear there was no sexual component to the definition of entice in the jury instruction, as subsection (1) of section 787.03, under which Lindemuth was charged, has no sexual component to it. No sexual intent finding on Lindemuth's part was required by the jury in order to find him guilty of interference with custody, as the jury found here.

In addition, the trial court used the definition of "entice" that the Fourth District Court of Appeal used, in part, in Leding. In Leding, the defendant was

charged with "enticing two children" under section 787.03(1), Florida Statutes (1995). As in the case before us, the defendant in Leding never said anything sexual, and there was no evidence to suggest Leding had a sexual intent. Because there was no standard jury instruction to define entice, and it was not defined in section 787.03(1), the Fourth District Court of Appeal used the definition in Black's Law Dictionary. There, the trial court instructed the jury with Black's Law Dictionary's definition of "entice,"[1] which stated:

> To wrongfully solicit, persuade, procure, allure, attract, draw by blandishment, coax or seduce. **To lure, induce, tempt, incite, or persuade a person to do a thing** ... Enticement of a child is inviting, persuading or attempting to persuade a child to enter any vehicle, building, room or secluded place with intent to commit an unlawful sexual act upon or with the person of said child.

Leding, 725 So. 2d at 1222 (emphasis added).

The Fourth District Court of Appeal found that the trial court did not err in instructing the jury with the definition of entice that it used, finding that the word "entice" was "specific enough to give persons of common intelligence and understanding an adequate warning." Id. Florida law recognizes that in the absence of a statutory definition, the plain and ordinary meaning of a word can be ascertained by looking to a dictionary. Suddath Van Lines, Inc. v. State, Dept. of Env. Protection, 668 So. 2d 209, 212 (Fla. 3d DCA 1996). Therefore, 787.03(1) is

---

[1] The citation in Leding does not state which edition of Black's Law Dictionary was used.

6

not vague, and the trial court did not err in using the definition of entice that it used in the jury instruction.

We decline to address Lindemuth's additional issue on appeal, finding it to be meritless. We therefore affirm Lindemuth's conviction and sentence.

Affirmed.