# Third District Court of Appeal
## State of Florida

Opinion filed April 26, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-0682
Lower Tribunal No. F22-15401
_____

## Liliana Francisca Vanegas,
Petitioner,

vs.

## The State of Florida,
Respondent.

A Case of Original Jurisdiction – Habeas Corpus.

The Law Office of Lance Joseph, and Lance Joseph (Dade City), for petitioner.

Ashley Moody, Attorney General, and Kseniya Smychkouskaya, Assistant Attorney General, for respondent.

Before LOGUE, MILLER, and BOKOR, JJ.

MILLER, J.

Petitioner, Liliana Francisca Vanegas, seeks a writ of habeas corpus, ordering her immediate release from the county jail, where she is being held without bond on the basis that she violated her probation by committing the offense of interference with child custody, in violation of section 787.03(1), Florida Statutes (2022). She contends she is being illegally detained because she did not commit a criminal act. For the reasons that follow, we are constrained to deny relief.

## BACKGROUND

Given the procedural posture, the facts are undisputed. Petitioner is married to Juan Gayle, and the couple shares a three-year-old son. While she was on felony probation for one count of grand theft, Gayle filed an ex parte petition for injunction for protection against domestic violence pursuant to section 741.30, Florida Statutes (2022). The domestic violence court entered a temporary injunction the same day. Under the terms of the injunction, petitioner was prohibited from having any contact with Gayle or the minor child. Petitioner moved to modify the terms of the injunction, and the court granted petitioner supervised visitation through Family Court Services.

After the court entered the supervised visitation order, Gayle dropped the child off at Angel Speech and Therapy ("AST") for a speech and

2

occupational therapy appointment. Petitioner then retrieved the child from Elisa Matos, his speech pathologist, bought him ice cream, and returned him to the therapy center. Shortly thereafter, Gayle picked up the child and learned of the outing. He contacted law enforcement, and some months later, petitioner was arrested. The State filed a misdemeanor information charging her with one count of violating a domestic violence injunction, in violation of section 741.31(4)(a), Florida Statutes (2022). The Department of Corrections filed a probation violation affidavit alleging she violated her probation.

Petitioner was taken into custody and held without bond pending a probation revocation hearing. She subsequently moved to dismiss the information, but prior to a hearing, the State filed a superseding felony information charging her with one count of interference with child custody, in violation of section 787.03(1). The information reads as follows:

> LILIANA FRANCISCA VANEGAS, on or about March 24, 2022, in the County and State aforesaid, did without lawful authority, knowingly or recklessly take or entice or aid, abet, hire, or otherwise procure another to take or entice, a minor, to-wit: D.G., from the custody of the minor's parent, guardian, public agency having the lawful charge of the minor or incompetent person, or any other lawful custodian, to-wit: ELISA MATOS, in violation of [section 787.03(1)], contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Florida.[1]

---

[1] Gayle's name does not appear in the information.

3

Petitioner again filed a motion to dismiss. Distilled to its essence, her argument was two-fold: (1) section 787.03(1) does not apply to a natural parent whose parental rights remain intact; and (2) a violation of a supervised timesharing order does not constitute a criminal offense. The State filed a demurrer and argued that petitioner committed a crime because she interfered "with Juan Gayle's 100% timesharing," and section 787.03(1) is equally applicable to natural parents. The trial court denied the motion, and the instant petition ensued.

**ANALYSIS**

Article I, section 13 of the Florida Constitution provides that "[t]he writ of habeas corpus shall be grantable of right, freely and without cost." Art. I, § 13, Fla. Const. "By way of the writ, courts are afforded a speedy method of conducting a 'judicial inquiry into the cause of any alleged unlawful custody of an individual or any alleged unlawful, actual deprivation of personal liberty.'" Parks v. State, 319 So. 3d 102, 105 (Fla. 3d DCA 2021) (quoting Porter v. Porter, 53 So. 546, 547 (Fla. 1910)). This court and others have repeatedly tested the legality of a detention premised upon a pending probation revocation hearing through habeas corpus. See, e.g., Baroulette

4

v. McCray, 904 So. 2d 575, 576–77 (Fla. 3d DCA 2005); McCarthy v. Jenne, 861 So. 2d 99, 99 (Fla. 4th DCA 2003).  Similarly, "[w]here an indictment or information entirely fails to charge a criminal offense[,] the accused may test the sufficiency thereof in habeas corpus proceedings."  Kittleson v. State, 9 So. 2d 807, 807 (Fla. 1942).

As with any statutory analysis, we adhere to the cardinal rule that to ascertain and effectuate the intent of the legislature, courts must give the words found in the statute their plain and ordinary meaning and, in the absence of ambiguity, refrain from resorting to canons of construction.  See Anderson v. State, 87 So. 3d 774, 777 (Fla. 2012).  We therefore "begin 'with the language of the statute,' and, here, because that 'language provides a clear answer, [our analysis] ends there as well.'"  Sch. Bd. of Miami-Dade Cnty. v. Fla. Dep't of Health, 329 So. 3d 784, 787 (Fla. 3d DCA 2021) (internal quotation marks omitted) (quoting Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438 (1999)).

Section 787.03 sets forth two separate third-degree felonies, both of which constitute "interference with custody."  Petitioner was charged with violating the first offense, which is described as follows:

> Whoever, without lawful authority, knowingly or recklessly takes or entices . . . any minor . . . from the custody of the minor's . . . parent, his or her guardian, a public agency having the lawful

5

charge of the minor[,] . . . or any other lawful custodian commits the offense of interference with custody . . . .

§ 787.03(1), Fla. Stat. The second part of the statute criminalizes parental interferences with custody in the following manner:

> In the absence of a court order determining rights to custody or visitation with any minor[,] . . . any parent of the minor . . . who has custody thereof and who takes . . . or entices away that minor . . . within or without the state with malicious intent to deprive another person of his or her right to custody of the minor . . . commits a felony of the third degree . . . .

§ 787.03(2), Fla. Stat.

Petitioner contends that, in the absence of a termination of parental rights, a natural parent may only be charged under the latter portion of the statute. She posits that to find otherwise would be to allow the State to do an improper end-run around the malicious intent scienter requirement, diluting the burden of proof.

This argument is persuasive. The statute is hardly a model of clarity and contains no definition section. A cursory reading might suggest that parental interference cases are uniquely relegated to the second part of the statute. Indeed, this court and a sister court have observed in passing that "[s]ection 787.03(1) prohibits interference with parental custody by a person who is not a parent or lawful custodian of the minor child in question." Lindemuth v. State, 247 So. 3d 635, 638 (Fla. 3d DCA 2018); see also State

6

v. Earl, 649 So. 2d 297, 298 (Fla. 5th DCA 1995) ("Although very poorly written, it appears that subsection (2) of section 787.03, added in 1987, is designed to govern the crime of interference with custody by a parent."). This perspective is reinforced by the fact that another statute, section 787.04(1), Florida Statutes (2022), criminalizes taking a child "beyond the limits of this state" or concealing "the location of a minor" in violation of a court order.

But, upon closer reading, section 787.03(1) is extraordinarily broad in scope. By its plain language, the statute targets "[w]hoever" interferes with custody. This word necessarily has a comprehensive meaning and does not lend itself to any restrictive interpretation. As there is no explicit parental exemption, any person, including a parent, falls within the ambit of the statute.

Consistent with this view, our research has revealed several published opinions involving parental prosecutions commenced under section 787.03(1). None, of course, involve an act as inconsequential as that forming the basis for prosecution in this case. See Khan v. State, 704 So. 2d 1129, 1130–31 (Fla. 4th DCA 1998) (reversing father's conviction for interfering with custody of child under section 787.03(1) but affirming conviction under section 787.04(1) where father removed minor from state

7

when he moved to Pakistan with daughter in violation of court order); Arroyo v. State, 705 So. 2d 54, 56–57 (Fla. 4th DCA 1997) (reversing and remanding mother's conviction under section 787.03(1) where State presented no evidence of mother's participation in taking her children from lawful custodian where evidence demonstrated only mother's presence in vehicle at the time her husband drove their children to Mexico). Relying upon the plain language, we conclude that the statute is applicable, and the mere fact that two alternative statutory provisions contain heightened proof requirements does not render the instant charge invalid.[2]

Further, we are compelled to reject the contention that an award of shared parental responsibility and supervised timesharing renders the State incapable of proving petitioner acted "without lawful authority" within the meaning of the statute.[3] By court order, petitioner was only authorized to

---

[2] It requires little imagination to envision the "parade of horribles" likely to result from criminalizing negligible and inadvertent deviations from court ratified timesharing agreements in high-conflict family disputes.

[3] Although courts have long distinguished between temporary and permanent custody awards under common law principles, this is a case of pure statutory interpretation. See, e.g., Adams v. State, 126 S.E.2d 624, 625–26 (Ga. 1962) ("The parental rights of the parties are not adjudicated by the award of temporary custody. A temporary award of custody differs from a permanent award as the latter is a final adjudication of the rights of the parties . . . . No such finality exists as to a judgment awarding temporary custody."); People v. Fields, 300 N.W.2d 548, 550 (Mich. Ct. App. 1980), superseded by statute, Mich. Comp. Laws § 750.350 (1983) ("We disagree

8

access the child at visitation appointments supervised by Family Court Services. Retrieving the child from therapy and taking him on an outing appears to have been in derogation of those conditions.

Lastly, to the extent that the State is alleged to have stretched the acceptable boundaries of prosecutorial discretion and the case more properly belongs in family court, at least one court has embraced that view. In State v. Wengatz, 471 N.E.2d 185, 186 (Ohio Ct. App. 1984), the government filed criminal charges after a mother defied an existing custody order and traveled to Walt Disney World Resort with her young children for two weeks. The Ohio appellate court observed: "a more appropriate method of handling the father's complaint would have been by a contempt proceeding in domestic relations court. To put a mother in jail for two years for giving her children a vacation is a gross miscarriage of justice and totally senseless." Id. at 187. Here, the mother has been jailed for over nine months for a substantially less egregious deviation.

---

with the people's position that it is the very existence of a court order rather than the temporary or permanent nature of the order which determines whether a kidnapping has in fact occurred. There is a crucial difference between a parent who has temporarily lost custody of a child and one who has permanently lost parental rights. A parent whose rights remain undecided at the time of the taking may not have any right to custody, but we are of the opinion that temporary loss of physical possession of the child is not the proper basis for decision.").

Nonetheless, it is well-settled that "[p]rosecutorial discretion is by its very nature exceedingly broad," In re J.S., 19 A.3d 328, 331 n.2 (D.C. 2011) (alteration in original) (quoting United States v. Wilson, 342 A.2d 27, 30 (D.C.1975)), and the judiciary is powerless in habeas proceedings to interfere in the decision to charge an individual for a de minimis offense. But see, e.g., People v. Page, 353 N.Y.S.2d 358, 360–61 (N.Y. Town Ct. 1974) (holding accusatory portion of information sufficient but factual portion of information defective for failure to contain evidentiary matter to show intent of crime of custodial interference); State v. Switzer, 157 N.E.2d 466, 467–68 (Ohio Mun. 1956) (dismissing complaint and discharging defendant father where evidence was insufficient to establish father's intent to unlawfully detain child). Accordingly, we are obliged to deny relief.

Petition denied.